UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 1:25MJ154 |
| | ) | |
| TOREZ RILEY | ) | |

**TOREZ RILEY'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF OPPOSING MR. RILEY'S MOTION TO DISMISS COMPLAINT WITH PREJUDICE AND TO EXPUNGE HIS ARREST**

Torez Riley, through and by counsel, respectfully submits his response to the government's argument opposing his Motion to Dismiss the above-captioned case with prejudice and to expunge his arrest record in this case.

I.   **Relevant Background**

On August 18, 2025, Mr. Riley was walking into a Trader Joe's in the District of Columbia when suddenly a phalanx of armed federal and local law enforcement officers stopped and searched him. Witnesses on the scene observed no less than ten law enforcement officers effectuate the stop. The law enforcement officers included officers from Department of Homeland Security (DHS), Immigration Customs Enforcement (ICE), and the Federal Bureau of Investigations (FBI). Let that sink in: Over half a dozen armed federal officers deployed to effectuate a stop and search of a single man walking into a grocery store. The array of law enforcement officers that stopped Mr. Riley *had absolutely no lawful basis to stop and search him*. Mr. Riley had not been acting suspiciously and there had been no report that he had been engaged in illegal conduct. It was an egregious violation of Mr. Riley's constitutional rights. Not only was it egregious, but it also should have been obvious to any trained law enforcement officer that there was no basis to search

Mr. Riley. Pursuant to the unlawful search, officers allegedly recovered two firearms. Mr. Riley was arrested and jailed that night. Following his unlawful search and arrest, there was an inexplicable two-day delay in bringing Mr. Riley to court during which he was jailed without access to a lawyer. At his Initial Appearance in federal court on August 21, 2025, the government requested his continued detention based on a complaint charging him with one count of 18 U.S.C. § 922(g)(1) and one count of D.C. Code § 4503 (a)(1). Mr. Riley remained detained for one week awaiting his detention hearing. During this time, he was unable to pick up his young children, work, and help his pregnant wife with household duties. Finally, one week after his patently unlawful search and arrest, the government moved to dismiss the complaint, acknowledging that officers had searched Mr. Riley without lawful basis.

## II. Argument

### i. Mr. Riley's complaint should be dismissed <u>with</u> prejudice.

As the Court is aware, the government correctly albeit belatedly moved to dismiss Mr. Riley's case following a patently unlawful search, seizure, and arrest. The government has thus "moved to dismiss the indictment without prejudice because of a defect in its case that has occurred through no fault of the defendant." *United States v. Pitts*, 331 F.R.D. 199, 204 (D.D.C. 2019). This Court need not grant this request and can, and should, instead dismiss this case with prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989)

Federal Rule of Criminal Procedure 48(a) "allow[s] courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *Poindexter*, 719 F. Supp. at 10 n. 10 (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). Though there is "a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the purpose sought

to be achieved by the government and its effect on the accused." *Id*. The Court should consider whether a dismissal without prejudice "would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." *Id*. "The primary reason for the 'leave of court' requirement [in Rule 48(a)] is to 'protect a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" *United States v. Pitts*, 331 F.R.D. 199, 202 (D.D.C. 2019) (quoting *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)).

Following the Court's on the record rebuke of law enforcement's search of Mr. Riley, the case garnered some media attention. *See e.g.,* Carrie Johnson, *'The most illegal search': Judges push back against D.C. criminal charges*, NPR (Aug. 26, 2025).[1] While the government was correct to dismiss Mr. Riley's case, based on a pattern of suspect conduct by law enforcement and government attorneys in recent weeks, counsel is concerned about the potential for retaliation against Mr. Riley. Indeed, here, the government acknowledged that it turned over the fruits of his unlawful search to Prince George's County authorities. Allowing the government to have the ability to pursue charges for Mr. Riley's alleged offense at some unknown time in the future objectively amounts to harassment and would be inconsistent with the manifest public interest in ensuring officers follow the Fourth Amendment.

Moreover, any evidentiary issue pertaining to suppression will not go away or get better with time. Instead, it will be increasingly difficult for Mr. Riley to investigate the case as time goes on. For example, the many concerned citizens who witnessed the unlawful stop may not be located

---

[1] Available at https://www.npr.org/2025/08/26/g-s1-85119/crime-washington-dc-judges-arrests (last accessed Aug. 27, 2025).

at a later time. Thus, "it objectively amount[s] to harassment [] and is [] contrary to the public interest[] to allow the prosecutor to dismiss charges but nevertheless keep them in abeyance for an indefinite period of time in the hope or expectation that something will turn up to remove the complications arising from" the suppression issues in this case. *Poindexter*, 719 F. Supp. at 11.

The government can provide no "sufficient basis for avoiding a dismissal with prejudice." *Id*. "[T]he problem that is causing the government's current desire to dismiss" the indictment is incurable and will remain the same in the future. *Id*. at 12 n.18. On the other hand, dismissal without prejudice will subject Mr. Riley to an indefinite period of uncertainty during which he may, at any time, be re-arrested for a second time for the alleged offense in this case, detained for days, and forced to relitigate the suppression issue in this case, since a decision has not yet been issued. Mr. Riley should not "have to wait in a state of uncertainty and under public obloquy for an indefinite period of time" so that the government may possibly arrest and try him on the same charge. *Id*. at 12. The Court should protect him from the indefinite uncertainty this entails because it effectively amounts to harassment. *Id*. The prejudice to Mr. Riley from a dismissal without prejudice warrants a dismissal with prejudice in light of the facts and circumstances of this case.

Judge Kelly has ordered dismissal with prejudice in a similar one-count § 922(g) case where the government dismissed after a motion to suppress was filed, reasoning that the government failed to meet its "initial burden of explaining that a dismissal without prejudice would be in the public interest." *United States v. Brandon Lee*, No. 19-cr-140 (TJK), Min. Order (12/18/2019) (quoting *United States v. Florian*, 765 F. Supp. 2d 32, 35 (D.D.C. 2011)). As in *Lee*, the government has not explained here why dismissal without prejudice would be in the public interest.

4

For the foregoing reasons, Mr. Riley respectfully requests that this Court dismiss Count the complaint *with* prejudice.

### III. Mr. Riley's arrest should be expunged or sealed.

*i. The Court should expunge Mr. Riley's arrest for the federal offense.*

The government claims expungement is inappropriate here, but they are wrong. While there may be no applicable expungement statute, "courts have the inherent, equitable power to expunge arrest records." *Livingston v. United States Department of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985). This is true both where there is an "unlawful … arrest" and where "equitable considerations" support it. *United States v. McKnight*, 33 F. Supp. 3d 577, 581 (D. Md. 2014) (noting that "the courts clearly have ancillary jurisdiction to expunge records of unlawful … arrests," while expunging arrest record where individual completed pretrial diversion program using its equitable discretion to "manage its proceedings, vindicate its authority, and (in particular) effectuate its decrees." (internal quotations omitted)).

As one court explained:

> In the absence of a specific denial of power, this court may fully effectuate its jurisdiction and do complete justice in the cases before it. *Morrow v. District of Columbia,* [] 417 F.2d 728, 737-738 [(D.C. Cir. 1969)]. *Cf.*, 28 U.S.C. § 1651 (All Writs Statute). This plenary power undoubtedly includes the authority to order expunction of criminal records where circumstances demand such action. *Menard v. Mitchell*, [] 430 F.2d 486 ([D.C. Cir.] 1970); *Kowall v. United States*, 53 F.R.D. 211, 213 (W.D. Mich. 1971) (expunction ordered in connection with granting relief under 28 U.S.C. § 2255); *United States v. Kalish,* 271 F.Supp. 968 (D.P.R. 1967). . . . Expunction has generally been ordered where the arrest was without probable cause, *Menard v. Mitchell*, *supra*, for harassment, or where there are extraordinary circumstances such as mass arrest. *See, e.g., Wheeler v. Goodman*, 306 F.Supp. 58, 65-66 (W.D.N.C. 1969).

*United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976) (granting expungement where the court dismissed the indictment upon the filing of a motion to quash).

Here, Mr. Riley's arrest was unlawful and for harassment, and equitable considerations require expungement. As this Court underscored, "It is without a doubt the most illegal search I've ever seen. I'm absolutely flabbergasted at what has happened. A high school student would know this was an illegal search." Carrie Johnson, '*The most illegal search': Judges push back against D.C. criminal charges.* Rather than a valid stop, "[this Court] said Torez Riley appeared to have been singled out because he is a Black man who carried a backpack that looked heavy." *Id.* "The police are out there looking for everybody, and it seems they're looking for people that look like you[.]" Dave Jamieson, *Judge Warns Of 'Lawlessness' In Trump's DC Policing Takeover*, HuffPost (Aug. 25, 2025).[2]

Expungement is wholly appropriate in these extraordinary circumstances. As in *McKnight* and *Bohr*, "[Mr. Riley's] case never reached the trial stage[,]" and "[w]ithout subsequent proceedings, expunction of the [] arrest records would be a simple and brief matter." *Bohr*, 406 F. Supp. at 1219. Moreover, the balance of equities is clearly in Mr. Riley's favor. "The potential that improper inferences will be drawn from arrest records is significant." *Id.* at 1220 (citing *Morrow v. District of Columbia,* supra, at 742; *Menard v. Mitchell,* supra, at 491). Yet, these records are the product of shoddy police work, an illegal search, and a "charge first, ask questions later" mentality at the U.S. Attorney's Office. Jamieson, *Judge Warns Of 'Lawlessness' In Trump's DC Policing Takeover*. There is simply no valid interest that the government or the public has in maintaining access to records that are a product of such lawlessness.

---

[2] Available at https://www.huffpost.com/entry/judge-sounds-alarm-trump-dc-takeover_n_68aca65ae4b01646d84f81e1 (last accessed Aug. 27, 2025).

### ii. *The Court should seal Mr. Riley's arrest for the charged D.C. Code Offense.*

In addition to the federal charge, Mr. Riley was also charged with a violation of D.C. Code § 22-4503(a)(1). D.C. law has an explicit mechanism for sealing records in just this situation. Per D.C. Code § 16-806(a)(1), this Court <u>shall</u> order the sealing of "all criminal records and court proceedings" related to "[c]itations, arrests, and charges for the commission of a criminal offense," provided that the case "was terminated by the prosecutor or otherwise reached a final disposition and did not result in a conviction or acquittal"; and the motion "demonstrate[es], by a preponderance of the evidence, that it is in interests of justice to seal the records."[3]

The government already recognized that dismissing the matter "is in the interests of justice," ECF No. 6, and just so for sealing the records as well. When deciding if sealing is in the interests of justice, a court weighs three factors: (1) "the interests of the movant in sealing the publicly available records of their citations, charges, arrests, or convictions"; (2) "The community's interest in furthering the movant's rehabilitation and enhancing the movant's reintegration into society through education, employment, and housing…"; and (3) "The community's interest in retaining access to those records, including the interest of current or prospective employers in making fully informed hiring or job assignment decisions and the interest in promoting public safety." D.C. Code § 22-806(b)(1). This balancing overwhelmingly favors Mr. Riley.

As with the balance of the equities for expungement above, the community has no interest in retaining access to records that were "based on little or unlawfully obtained evidence [that] hurt[] public safety, not improve[d] it." Carrie Johnson, *'The most illegal search': Judges push back against D.C. criminal charges*. Mr. Riley, conversely, has a strong interest in sealing records

---

[3] Mr. Riley's charge is not one listed in § 16-805(b), per the requirement in § 16-806(a)(1)(B).

of his illegal stop and lawless charge so that he is not harmed by their availability in the public record, while the community clearly benefits from no further impediments being placed in his path towards rehabilitation and reintegration. This Court should therefore order these records sealed in the interests of justice.[4]

## Conclusion

Wherefore the reasons herein and any others that appear to this Honorable Court, this Court should dismiss the complaint against Mr. Riley with prejudice and order that his arrest on August 18, 2025, be expunged pursuant to the court's inherent authority and sealed pursuant to D.C. Code § 16-806(a)(1).

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER
/s/

_____
Elizabeth Mullin
Joanna Perales
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
202-208-7500

---

[4] "The effect of a criminal record sealing shall be to remove all records related to a citation, arrest, charge, prosecution, disposition, or conviction from public view and to permit restricted, nonpublic access by specific parties for specific purposes." D.C. Code § 22-807(a). This nonpublic, restricted access file will be available to those entities listed in D.C. Code § 801(5)(A)-(F) and only for the reasons listed in D.C. Code § 16-807(d)(1). Once the Court orders seal, and within 90 days, "the Clerk and each prosecutor and law enforcement, corrections, pretrial, and community supervision agency shall: (A) Eliminate from all publicly available physical and computerized records any references that identify the person as having been cited, arrested, prosecuted, or convicted[.]" *Id* § 807(c)(1). In response to public inquiries, these officials shall reply that "no records are available[.]" *Id.* § 807(c)(1)(C). Within 90 days of the order to seal, each prosecutor and law enforcement, corrections, pretrial, and community supervision agency must file a certification with the Court stating that "to the best of its knowledge and belief, all references that identify the person as having been cited, arrested, prosecuted, or convicted have been sealed." *Id.* § 807(c)(2).